CITY OF ST. PAUL v. CHARLES H. CLARK.[1]

July 5, 1901.

Nos. 12,661—(177).

**Meaning of "Agent."**

 An "agent," as defined by chapter 10, § 10, of the charter of the city of St. Paul, is one who has general control of the premises. One whose authority is limited merely to the renting of premises and the collection of rents is not such an agent, and his authority to abate a nuisance will not be presumed.

**Meaning of "Owner."**

 The term "owner," as used in chapter 4, § 10, subd. 42, includes an agent who is endowed with full power to control or regulate premises.

Appeal by defendant from a judgment of the municipal court of St. Paul, Hine, J.  Reversed.

*Walter L. Chapin,* for appellant.

*James E. Markham* and *John W. Finehout,* for respondent.

LEWIS, J.

The defendant was convicted in the municipal court for violating ordinance No. 2171 of the city of St. Paul, approved on February 9, 1901, by refusal to abate and remove a nuisance upon certain premises.

The stipulated facts upon which defendant was convicted, so far as material, are as follows: That the existence of the nuisance was at No. 320 Smith avenue, in St. Paul; that the premises were owned by a nonresident, for whom the defendant was acting as rental agent; that defendant was not himself in occupancy of the premises, nor did he contribute to the creation or existence of the nuisance, which was caused by the tenant, who had been in continuous occupancy of the premises for eighteen months, and had regularly paid his rent to the nonresident owner through defendant as the rental agent; that defendant had no further control over the premises than that of rental agent, and it does

[1] Reported in 86 N. W. 893.

not appear that he had authority to expend any of his principal's money for any purpose without specific authority; that since the notice to abate the nuisance defendant has had no money of the owner in his hands with which to do so, and that defendant was never authorized to abate the nuisance; that during the time mentioned the owner had no other agent in the city.

Ordinance No. 2171 provided that a notice of twenty-four hours be given to the owner or agent of such premises when it was found necessary and desirable to abate a nuisance. The only provision in the charter of the city of St. Paul (1900) which refers to an agent is section 10 of chapter 10. Sections 9, 10, and 11 of that chapter refer to the duties of the health commissioner. That part of section 10 which is pertinent here reads as follows:

"To carry out the provisions of the foregoing section it shall be the duty of the commissioner of health to serve a notice in writing upon the owner, occupant or agent of any lot, building or premises in or upon which any nuisance may be found, or upon the person creating or continuing any such nuisance, requiring him to abate the same, * * * and if such owner, occupant, or agent, or person, creating or continuing such nuisance, shall neglect or refuse to comply with the requirements of such order within the time specified, he shall be subject to a penalty hereinafter provided, and it shall be the duty of said officer to proceed at once, upon the expiration of the time specified in said notice, to cause such nuisance to be abated; and provided, further, that whenever the owner, occupant or agent of premises in or upon which any nuisance may be found is unknown, or cannot be found, the said commissioner shall proceed to abate the same without notice; and in either case the expense of such abatement shall be collected from the person or persons who may have created, continued or suffered such nuisance to exist."

An "agent" such as is described in this section is one who in all respects represents the owner, so far as the control and regulation of the property under his agency is concerned. It means an agent who has the power to permit the commission of a nuisance and the continuance thereof, and has no reference to an agent whose authority is limited, and who has no general supervision of the property. Possibly, in practice, a mere rental agent may have such general control of premises, but, in the absence of evidence to that effect, we cannot assume such to be the fact. A mere

rental agent is ordinarily one who simply lets premises and collects rents thereon, and, in the absence of definite proof, it cannot be said that this defendant was the representative of the owner in all respects, so far as the control of the property is concerned. Section 10 contemplates that the agent shall be personally responsible for negligence in continuing a nuisance. But he cannot be held personally responsible unless he has been put into actual and complete control of premises, with authority to abate nuisances, and such control would imply power and authority to retain from the moneys collected the amount necessary for their abatement.

Under this view of the term "agent," we are of the opinion that the term "owner," as used in chapter 4, § 10, subd. 42, may include the agent. That section reads as follows:

"To compel the owner or occupant of any grocery, * * * or other unwholesome, nauseous house or place, to cleanse, remove or abate the same from time to time, as often as may be deemed necessary for the health, comfort and convenience of the inhabitants of said city."

If the owner is a nonresident, and an agent as above defined is in charge of his premises, he is, to all intents and purposes, the owner. Therefore we hold that the ordinance is valid, but that it has no application to the facts in this case, for the reason that the agency here in question is of a limited, and not of a general, character.

Judgment reversed.